United States District Court
for the
Southern District of Florida

| | |
|---|---|
| MSP Recovery Claims, LLC, MSPA Claims 1, LLC, and MAO-MSO Recovery II LLC, Series PMPI, Plaintiffs, <br><br>v.<br><br>Metropolitan General Insurance Co., Metropolitan Casualty Insurance Co., Metropolitan Group Property & Casualty Insurance Co., MetLife Auto & Home Group, and Metropolitan P&C Insurance Co., Defendants. | Civil Action No. 20-24052-Civ-Scola |

## Order

This matter is before the Court upon the Eleventh Circuit's mandate to consider whether: (1) dismissal is appropriate under the "two dismissal rule" found at Federal Rule of Civil Procedure 41(a)(1)(B), and (2) the Court has personal jurisdiction over Defendants Metropolitan Group Property and Casualty Insurance Company, and MetLife Auto & Home Group. (ECF No. 48.) A review of the record also reveals that the Court has yet to rule on the Defendants' motion to dismiss the Plaintiffs' class action allegations. These matters were fully briefed by the parties on the Defendants' motion to dismiss and are thus ripe for consideration. (*See* ECF Nos. 26, 34, 37.)

1. **Background**

This putative class action arises under the Medicare Secondary Payer ("MSP") provisions of the Medicare Act, 42 U.S.C. § 1395y, *et seq.* Plaintiffs' amended class complaint against the Defendants is one of many similar actions that they and their related entities have filed throughout the country. These cases typically allege the Plaintiffs or one of their affiliates obtained an assignment from a Medicare Advantage Organization ("MAO") to try to recover money linked to costs incurred by the MAO in connection with their enrollees' medical expenses after being injured in accidents.

The MSP was enacted to combat the rising costs of Medicare. The MSP reformed the Medicare system such that Medicare and MAOs became secondary payers who would not bear the costs of medical procedures that

were already covered by primary payers, i.e. other private insurance companies. Under the MSP, Medicare and MAOs could still make "conditional payments" to cover the medical bills of their beneficiaries where a primary payer, such as one of the Defendants, could not be expected to remit prompt payment. Where Medicare or a MAO "has made a conditional payment, and the primary payer's 'responsibility for such payment' has been 'demonstrated,' as by a judgment or settlement agreement, the primary payer is responsible to reimburse Medicare or the MAO within 60 days." *See MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1309 (11th Cir. 2020). When a primary payer fails to remit such payment, Medicare can seek double damages from the primary payer under the MSP's right of action for the government. *Id.* Assignees of MAOs, likewise, can seek double damages under the MSP's private right of action. *Id.*

      Here, the Plaintiffs allege that the Defendants, as primary payers, have "systematically and uniformly failed to honor their primary payer obligations" under the MSP by failing to pay or reimburse Medicare MAOs for medical expenses "resulting from injuries sustained in automobile and other accidents" that "were paid by Medicare Advantage Organizations." (ECF No. 10 at ¶ 1.) The Plaintiffs state that they utilize a "proprietary system" that matches health care claims data from their assignors to data from the Centers for Medicare & Medicaid Services ("CMS"), police crash and incident reports, and data from primary payers, to identify instances where a primary payer failed to honor their obligations under the MSP. (ECF No. 10 at ¶ 8.) The Plaintiffs claim to have used their proprietary system to identify "multiple instances in which Plaintiffs' Assignors made conditional payments for accident-related medical expenses which should have been paid and/or reimbursed by Defendants." (ECF No. 10 at ¶ 53.) The Plaintiffs provided, as Exhibit A to their amended complaint, a list of claims that were identified by the Plaintiffs' data analysis. (ECF No. 10 at ¶ 55.) Unlike complaints filed in other similar lawsuits, the Plaintiffs do not provide a specific exemplar in their complaint showing an example of an instance or instances where a MAO made payments, together with the amount of those payments, for which the Defendants would have allegedly been responsible. Rather, the Plaintiffs rely exclusively on their Exhibit A to their complaint.

      The Court found the Plaintiffs' reliance on Exhibit A insufficient to state a claim under the MSP and thus dismissed their complaint pursuant to Rule 12(b)(6). (ECF No. 38.) However, the Eleventh Circuit reversed that decision and directed the Court to consider two remaining grounds that the Defendants present for dismissal: (1) the "two-dismissal rule," and (2) lack of personal jurisdiction, thus prompting this opinion.

## 2. Legal Standards

Rule 12(b)(6) allows a Court to dismiss an action where it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

In turn, Rule 12(b)(2) allows for dismissal for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir. 2009). Once the defendant has presented sufficient evidence, "the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Id.* A federal court's exercise of personal jurisdiction must: "(1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment[.]" *Id.*

## 3. Discussion

### A. The Two-Dismissal Rule

The Court begins with the "two-dismissal rule." Under it, a plaintiff's second voluntary dismissal of the same claim "operates as an adjudication on the merits." *See* Fed. R. Civ. P. 41(a)(1)(B). Consequently, a second voluntary dismissal operates as a prior "judgment on the merits" for purposes of res judicata, which "will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same." *See Sealey v. Branch Banking & Tr. Co.,* 693 Fed. App'x 830, 834 (11th Cir. 2017); *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1187 (11th Cir. 2003) (cleaned up).

The Defendants argue that the doctrine forecloses the Plaintiffs' suit because they/their privies have voluntarily dismissed the Defendant/its privies at least four times in two actions before this Court and two actions before the Eleventh Judicial Circuit Court of Florida.[1] (*See* Mot., ECF No. 26 at 4.)

The Plaintiffs offer no response concerning the state court actions. The Plaintiffs say that the cases before this Court, although voluntarily dismissed,

---

[1] The cases are: *MSP Recovery Claims, Series LLC v. Metro. Cas. Ins. Co.*, Case No. 17-cv-23982-KMW (S.D. Fla.); *MSP Recovery Claims, Series LLC v. Metro. Cas. Ins. Co.*, Case No. 17-cv-23825-DLG (S.D. Fla.); *MSP Recovery Claims, Series LLC v. Metro. Prop. & Cas. Ins. Co.*, Case No. 2017-018987-CA-01 (Fla. Cir. Ct.); *MSP Recovery Claims, Series LLC v. Metro. Grp. Prop. & Cas. Ins. Co.*, Case No. 2017-018986-CA-13 (Fla. Cir. Ct.).

do not present a bar to this suit because they involved different parties and claims. (*See* ECF No. 34 at 6-8.) As such, they effectively argue that the third and fourth prongs of the res judicata analysis fail.

Indeed, there is no question as to the first prong of the res judicata analysis seeing as the voluntary dismissals occurred in courts of competent jurisdiction. The same goes for the second prong because the dismissals themselves operate as final judgments per the discussion above. Thus, the Court need only consider whether the third and fourth prongs are met.

### (1) *Identical Parties*

It is not the first time the Plaintiffs resist dismissal by the arguments they present here. As noted, the Plaintiffs and their related entities file lawsuits such as these throughout the country. In *MSP Recovery Claims, Series LLC. et al. v. Progressive Casualty Insurance Co. et al.*, Plaintiff MSP Recovery Claims, Series LLC ("MSPRC") asserted the same arguments to resist dismissal on accusations of claim-splitting, which "is the same as res judicata, but with a presumption of a [prior] final judgment instead of a [an actual prior] final judgment." No. 1:21CV926, 2022 WL 743503, at *4 (N.D. Ohio Mar. 11, 2022) (cleaned up). Even closer to home, in *MSP Recovery Claims, Series LLC v. Esurance Property and Casualty Insurance Company*, Plaintiff MSPRC argued the same to resist dismissal under res judicata. No. 20-23590-CIV, 2021 WL 7540811, at *5 (S.D. Fla. Apr. 8, 2021) (Torres, Mag. J.). Neither court agreed with MSPRC.

As is the case here, the parties to the previously dismissed actions did not perfectly align to the ones before those courts. However, neither court found that fact dispositive. That is because the third prong of the res judicata analysis goes satisfied where "'the parties, *or those in privity with them*, are identical[.]'" *Esurance*, 2021 WL 7540811 at *4 (emphasis added) (quoting *Tuscano v. Evening Journal Ass'n*, 179 Fed. App'x 621, 625 (11th Cir. 2006)).

The Plaintiffs here are MSPRC, MSPA Claims 1, LLC ("MSPA"), and MAO-MSO Recovery II LLC, Series PMPI ("MAO"). Because MSPRC was a Plaintiff in all four predecessor actions, the question of privity only concerns the other two Plaintiffs. For starters, the Plaintiffs' corporate disclosure statement refers to all Plaintiffs in the collective as "MSP." (ECF No. 6.) It also notes that an entity named MSP Recovery Services, LLC is the sole member of MSPA. (*Id.*) That very entity registered MSPRC to do business in Florida. (Mot. 6.) Additionally, MSPA shares its principal place of business with MSPRC. (Am. Compl. ¶¶ 11, 14, ECF No. 10.) In turn, MAO is "controlled by MSPRC" such that MSPRC "maintains the right to sue on behalf of each series and pursue any and all rights, benefits, and causes of action arising from assignments to a series." (Am. Compl. ¶ 12.)

Plus, importantly, MSPRC's predecessor suits were putative class actions purporting to represent the interests of *all* parties similarly situated to it. On these facts, the Court finds that MSPRC shares a "substantive legal relationship" with the current Plaintiffs not named in the predecessor suits. *See, e.g.*, *Sealey*, 693 Fed. App'x at 835; *Esurance*, 2021 WL 7540811, at *6.

For their part, the Defendants admit that privity among them and the predecessor Defendants exist. (*See* Mot. 7.) However, the Court need not rest on that representation alone. At least one predecessor Defendant is also a named Defendant here—Metropolitan Group Property and Casualty Insurance Company. As to the remaining Defendants, the Plaintiffs are the ones that actually provide the Court with what they say is proof of the legal relationship among all the Defendants in an exhibit to the amended complaint. (ECF No. 10-2.) That document indicates that the Defendants in this and the predecessor actions are all part of the same corporate holding group. (ECF No. 10-2 at 2.) Even more, all the Defendants share the same principal place of business. (Am. Compl. ¶¶ 16-19.) On those facts, the Court finds that a substantive legal relationship amounting to privity exists among the new Defendants and their predecessors.

Consequently, although the exact set of parties across the predecessor and current lawsuits is not before the Court, the substantial legal relationships among those parties render them "identical" to one another for purposes of res judicata.

The Plaintiffs fail on the third prong of the res judicata analysis.

**(2) *Same Causes of Action***

Next, the Court turns to the question of whether "the prior and the present causes of action are the same." *Davila*, 326 F.3d at 1187. "Importantly, this bar pertains not only to claims that were raised in the prior action, but also to claims that could have been raised previously." *Id.* (cleaned up). To determine "whether the prior and present causes of action are the same, [the Court] must decide whether the actions arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Id.* (cleaned up).

The two state court actions and the federal suit before Judge Williams[2] all involved the same factual predicate. They turned on insurance claims that purportedly went unpaid by the Defendants despite their obligation to render payment on them as primary providers of no-fault coverage under Florida law.

---

[2] *MSP Recovery Claims, Series LLC v. Metro. Cas. Ins. Co.*, Case No. 17-cv-23982-KMW (S.D. Fla.); *MSP Recovery Claims, Series LLC v. Metro. Prop. & Cas. Ins. Co.*, Case No. 2017-018987-CA-01 (Fla. Cir. Ct.); *MSP Recovery Claims, Series LLC v. Metro. Grp. Prop. & Cas. Ins. Co.*, Case No. 2017-018986-CA-13 (Fla. Cir. Ct.).

(*Compare* Williams Compl. ¶ 119, ECF No. 16, *MSP*, Case No. 17-cv-23982-KMW (describing putative class members as those that "provide[d] benefits under Medicare Part C, in Florida . . . between 2011 and 2017 (the 'Class Period') for which the Defendant had provided no-fault insurance coverage[.]") *with* State Compl. Ex. A ¶ 27, ECF No. 26-1 (describing putative class members as those owed reimbursement of payment for the defendant's liability under Florida's no-fault law) *and* State Compl. Ex. C ¶ 27, ECF No. 26-3 (same).)

And in fact, the "representative facts" across all three suits appear to be nearly identical. (*Compare* Williams Compl. ¶¶ 111-14 *with* State Compl. Ex. A ¶¶ 15-21 *and* State Compl. Ex. C ¶¶ 15-21.) Both state court suits were voluntarily dismissed on October 31, 2017, (ECF Nos. 26-2, 26-4) and the suit before Judge Williams was voluntarily dismissed on July 27, 2018. (*See* ECF No. 69, *MSP*, Case No. 17-cv-23982-KMW.)

Thus, to the extent there are liabilities claimed here that were: (1) repeated in both state court actions, and/or (2) the subject of either state court action and also the subject of the suit dismissed before Judge Williams, they are precluded here. That preclusive effect naturally does not extend to later-in-time liabilities that were assigned to the Plaintiffs *after* the dismissal of the later-in-time suit before Judge Williams. However, the preclusive effect *does* apply to any claims here that could have been raised in any of those three suits but were not.

That brings the Court to the suit before Judge Graham. As in the other actions, the charge there was a failure to make payments due to the insurers represented by the Plaintiffs (or their privies), as required by the MSP. However, this suit involved allegations of nationwide liabilities stemming from insurance claims that Metropolitan Casualty Insurance Company settled but did not pay. (*See* Graham Compl. ¶ 121, ECF No. 14, *MSP Recovery Claims, Series LLC v. Metro. Cas. Ins. Co.*, Case No. 17-cv-23825-DPG (S.D. Fla.) (describing putative class members as those that "provide[d] benefits under Medicare Part C, in the United States of America and its territories, who have made payments for medical items and services on behalf of their beneficiaries between 2011 and 2017 (the 'Class Period') for which Defendant has not reimbursed in full or in part after Defendant entered into settlements with Medicare Beneficiaries[.]").)

Although the suit before Judge Graham also involved violations of the MSP, it turned on facts distinct from those that gave rise to the claims before Judge Williams. And because the two suits did not arise out of the same "nucleus of operative fact," the question of whether the claims in the suit before Judge Graham could have been raised in the one before Judge Williams (or vice versa) becomes irrelevant. *See Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1377 (11th Cir. 2011) ("In short, in order to determine whether two cases

involve the same cause of action for res judicata purposes, we are obliged to look at the common nucleus of operative fact and ask what legal theories were used or *could have* been employed in the first proceeding.") (emphasis added).

Accordingly, any overlap between the claims in the current suit and those raised before Judge Graham is not subject to preclusion.

### B. Personal Jurisdiction

Next, the Defendants argue that there is no personal jurisdiction over Defendant MetLife Auto & Home Group. In fact, they say it does not exist. (Mot. 20; Decl. of Maura Travers ¶ 4, ECF No. 26-6.) The Plaintiffs do little to contest the point. They simply blame the Defendants for purportedly reporting claims under that name. However, that does little to change the fact that the Court cannot exercise personal jurisdiction over a person that does not exist. *Cf. K3 Enterprises, Inc. v. Sasowski*, 20-24441-CIV, 2021 WL 8363506, at *6 (S.D. Fla. Nov. 22, 2021) (Cannon, J.) ("[T]he Court cannot recognize personal jurisdiction over No 5. Inc. for the breach of contract claims because No. 5 Inc. did not exist[.]"). Accordingly, Defendant MetLife Auto & Home Group must be dismissed.

Should discovery reveal that the insurance claims associated with "MetLife Auto & Home Group" are, in fact, associated with one of the other Defendants here, the Plaintiffs may pursue redress of those insurance claims against the corresponding Defendant(s), so long as those insurance claims are not subject to preclusion as described above. In making this ruling, the Court does not mean to instruct the parties to engage in any particularized discovery. The parties may request particularized discovery upon proper motion should the need arise.

Moving on, the Defendants also challenge the Court's personal jurisdiction over Metropolitan Group Property and Casualty Insurance Company. They represent that the entity "is not writing insurance in Florida nor does it have automobile insurance policies currently in force there." (Reply 9, ECF No. 37; Decl. of Maura Travers ¶ 5.) However, this statement—written in the present tense and rendered in December of 2020—does little to answer the question of whether this entity wrote any of the insurance claims at issue, which is what would give rise to the Court's exercise of jurisdiction.

To be sure, Florida's long-arm statute permits a court to exercise personal jurisdiction over a person who commits a tortious act within Florida, even if that person committed their tortious acts outside the state. *See* Fla. Stat. § 48.193(1)(a)(2) (2014); *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1216 (11th Cir.1999); *see also Mazer,* 556 F.3d at 1274 (11th Cir. 2009) (a federal court's exercise of personal jurisdiction must be appropriate under the

state long-arm statute). And it explicitly provides for jurisdiction over a person that breaches "a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)(7). The fact that the entity no longer does business in Florida would not extinguish this Court's jurisdiction over it as related to contacts the entity may have once maintained with the state in potentially writing the insurance claims at issue.

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *Mazer,* 556 F.3d at 1274. And a defendant challenging personal jurisdiction must present evidence to counter the plaintiff's allegations. *Internet Solutions Corp. v. Marshall,* 557 F.3d 1293, 1295 (11th Cir. 2009).

The Court finds that the Plaintiffs have established a prima facie case of personal jurisdiction as to Metropolitan Group Property and Casualty Insurance Company by listing the relevant Florida-based insurance claims in Exhibit A to their amended complaint. (*See, e.g.,* ECF No. 10-1 at 3, 4.) The Defendants, by contrast, have failed to carry the burden necessary to rebut that prima facie case.

Consequently, their motion must be denied as to Metropolitan Group Property and Casualty Insurance Company.

### C. Class Action Allegations

Unrelated to the above, the Defendants also moved the Court to dismiss the Plaintiffs' class action allegations on the basis of their complaint.

"While it is sometimes possible to decide the propriety of class certification from the face of the complaint, the Supreme Court has emphasized that class certification is an evidentiary issue, and it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 Fed. App'x. 930, 934 (11th Cir. 2016) (cleaned up). "In fact, the determination usually should be predicated on more information than the complaint itself affords. The court may, and often does, permit discovery relating to the issues involved in maintainability, and a preliminary evidentiary hearing may be appropriate or essential." *Id.*

Although the Defendants insist on the individualized nature of the claims backing the Plaintiffs' complaint, the Court finds that it would be premature to dismiss the class action allegations on the record before it. The Court will allow the class action allegations to stand for now. The Defendants may renew their arguments at a later stage of this litigation.

### 4. Conclusion

For the foregoing reasons, the Court **vacates** its Dismissal Order of March 2, 2021 (**ECF No. 38**) and enters this one in its stead. The Court hereby **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 26**) and **orders** as follows:

(i) The Court directs the Clerk to **reopen** this case;

(ii) The Court **partially grants** the Defendants' motion in **dismissing** any claims raised in this suit related to liabilities that were:
(1) repeated in both state court actions described *supra*, or
(2) the subject of either state court action and also the subject of the suit dismissed before Judge Williams; or
(3) could have been raised in any of the lawsuits described above;

(iii) Provided they are not precluded by paragraph (ii), any claims raised in this suit related to liabilities that were also raised in the suit before Judge Graham remain viable;

(iv) The Court **partially grants** the Defendants' motion in **dismissing** Defendant MetLife Auto & Home Group as a party;

(v) The Court **denies** the Defendants' request to dismiss Metropolitan Group Property and Casualty Insurance Company;

(vi) The Court **denies**, as premature, the Defendants' request to dismiss the class action allegations;

(vii) The Court **directs** the Plaintiffs to file, no later than **October 31, 2022**, a Second Amended Complaint consistent with this Order;

(viii) The Court **directs** the parties to file, no later than **November 14, 2022**, a Joint Scheduling Report setting forth revised proposed deadlines for the filings/events outlined in the Court's previous Scheduling Order. (ECF No. 33.)

**Done and ordered** in Miami, Florida, on October 5, 2022.

_____
Robert N. Scola, Jr.
United States District Judge